UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER BEY,

    Plaintiff,                                   Case No. 2:06-cv-243

v.                                             HON. ROBERT HOLMES BELL

TIMOTHY LUOMA, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Christopher Bey, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Warden Timothy Luoma, Deputy Warden Darlene Edlund, Assistant Deputy Warden William Luetzow, Resident Unit Manager William Jondreau, Corrections Officer M. Bennet, Corrections Officer Kevin Hemmela, Corrections Officer R. VanAlstine, Corrections Officer K. Kemp, Corrections Officer J. Burke, Corrections Officer G. Menard, Corrections Officer S. Pelto, Corrections Officer T. Hill, Corrections Officer D. Beauchamp, Corrections Officer P. Turner, Corrections Officer J. Besner, and Corrections Officer Unknown Ekdahl.

Plaintiff alleges in his complaint that defendants have deliberately subjected plaintiff and other prisoners to cruel and unusual punishment. Plaintiff contends that he is being housed in a unit with mentally ill prisoners. Plaintiff states that from July 14, 2005, until December 31, 2005, the unit has smelled strongly of human waste. Plaintiff claims that "human waste fumes" traveled through the ventilation system, causing the entire unit to smell like a dead body and raw sewage. Plaintiff states that the mentally ill prisoners are permitted to live in their cell with their own human

waste for hours to days as a punishment, while the human waste becomes rotten, causing plaintiff to suffer from vomiting, loss of appetite, migraine headaches, nosebleeds and lack of sleep. On third shift, the officers would be forced to spray "orange scent" into the ventilation system to counteract the smell of human waste.

Plaintiff further states that the mentally ill prisoners have been known to eat their own feces and smear it on their faces, bodies, and hair. Plaintiff claims that some prisoners placed their feces inside the sink drain, fountains and decorated their cells with feces. Plaintiff believes that some of the mentally ill prisoners might already be infected with some type of disease, and asserts that feces can spread Hepatitis A.

On September 15, 2005, and October 6, 2005, defendant Jondreau made legal mail rounds during a time when the odor of human waste was extremely noticeable. Plaintiff states that defendant Jondreau allowed unit officers to punish the mentally ill prisoners for urinating and defecating all over their cell by depriving them of food and water. Plaintiff alleges that he has overheard staff saying that if prisoners do not eat or drink, they cannot urinate or defecate. Plaintiff further states that prisoners, like himself, who file grievances and complaints, are punished by being housed near mentally ill prisoners.

Presently before the Court are the defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to demonstrate exhaustion of administrative remedies and on the merits. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*,

355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Defendants Bennett, Hemmela, VanAlstine, Kemp, Menard, Pelto, Hill, Beauchamp, Turner, Besner and Ekdahl move to dismiss plaintiff's complaint against them for failing to exhaust administrative remedies prior to filing this complaint. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910,

922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1] sets forth the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue with the staff member involved, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process, and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the Policy Directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶¶ R, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶ HH.  The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.  Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.  *Id.* at ¶ U.  "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ."  *Id.*

The Supreme Court held in *Woodford*, 126 S. Ct. at 2387, that the PLRA exhaustion requirement requires "proper exhaustion."  "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances.  *Id.* at 2386-388.  It is a precondition to any suit challenging prison conditions.  *Id.*  Therefore, following *Woodford,* if a plaintiff's grievance was not filed in a timely manner pursuant to the state's administrative rules, the plaintiff has not properly exhausted his administrative remedies and the claim is barred.  The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify this holding regarding "proper exhaustion."  To the contrary, the Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a Step I administrative grievance:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

> requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a - prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[2] The Court in *Jones* also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26. Finally, the *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.*

Defendants have recognized that it their burden to show that plaintiff failed to exhaust his grievance remedies. Defendants concede that plaintiff did exhaust his grievance remedies against defendants Luoma, Edlund, Luetzow and Jondreau. Defendants have attached a copy of plaintiff's grievance filing. Plaintiff attempted to exhaust three separate grievances on issues he presented in this case. One grievance was successfully exhausted. One grievance was dismissed as untimely and therefore cannot be considered properly exhausted, and one grievance did not involve the dates as set forth in this complaint. In fact, plaintiff asserts that the latter grievance is not relevant to this case. Plaintiff argues that his grievance was timely, however, his grievance was clearly rejected as untimely at every step of the grievance process. Accordingly, it is recommended that defendants Bennett, Hemmela, VanAlstine, Kemp, Menard, Pelto, Hill, Beauchamp, Turner, Besner and Ekdahl be dismissed without prejudice for failure to exhaust grievance remedies.

---

[2] As "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

Defendants also move for dismissal on the merits. Defendants argue that plaintiff cannot state a claim upon which relief may be granted. Defendants argue that as a matter of law, plaintiff's allegations that he was subjected to fecal odors and contaminated water fails to state an Eighth Amendment claim. In the court's prior opinion on this issue the court stated:

> The Magistrate Judge recommended that the complaint be dismissed because Plaintiff's contentions, at best, demonstrate that Defendants were negligent in their efforts to clean contaminated prisoner cells. In reaching that conclusion, the Magistrate Judge focused on the response to Plaintiff's step I grievance, in which a Resident Unit Manager reported that investigation demonstrated that staff were properly reporting deficiencies and ensuring the cleanliness of the unit on a daily basis.
>
> Upon review of the complaint, however, the Court finds that Plaintiff has alleged more than negligence. Plaintiff specifically alleges that Defendants delayed cleaning contaminated cells for hours or days as punishment. He also alleges that Defendants would make jokes about contaminated cells and the odor of the unit. Plaintiff supported his allegations with his own affidavit and those of several other prisoners. Accepting Plaintiff's allegations as true, as this Court must for purposes of initial review, Plaintiff has alleged that Defendants were both objectively and subjectively aware of the unsanitary conditions of the cells and failed to address them. The Court therefore concludes that Plaintiff has sufficiently alleged an Eighth Amendment violation.

Plaintiff has alleged that the odors have caused him headaches, nausea, loss of appetite, stress, redness in his eyes, loss of sleep, and nosebleeds from inserting toilet paper in his nose to reduce his ability to smell. Defendants rely upon the unpublished case of *Abdur-Reheem v. McGinnis,* 1999 WL 1045069 (6th Cir. 1999). In that case the Sixth Circuit affirmed summary judgment for the defendants based upon similar facts as asserted in this case. The court explained:

> Regarding the sickening odors caused by his mentally ill neighbor and the cleaning of that cell, Abdur-Reheem-X has not specified a specific serious health threat caused by these odors. A condition of confinement claim requires a showing that society considers the health threat "to be so grave that it violates contemporary standards of decency to expose anyone unwillingly" to it. *See Helling v.*

> *McKinney,* 509 U.S. 25, 36 (1993) (regarding exposure to cigarette smoke). Anyone who thoroughly cleans a bathroom is exposed to the strong smell of bleach. This element of Abdur-Reheem-X's claim lacks merit.
>
> Abdur-Reheem-X's claim that he was forced to endure the smell of his neighbor's feces reflects a squalid and regrettable circumstance; however, because the defendants did not orchestrate the circumstance with the intent to punish or cause harm, the claim was properly dismissed. Other than nausea, Abdur-Reheem-X has asserted no serious health threat arising from the unpleasant odors. The Eighth Amendment protects Abdur-Reheem-X from conditions of confinement that are health threats; it does not shield him from conditions that cause mere discomfort. *See Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992). In addition, the actions of the mentally ill inmate were not within the control of the defendants. Both Abdur-Reheem-X and his neighbor were in a segregated area within the prison complex. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *See Farmer,* 511 U.S. at 844-45 (internal citations omitted).
>
> Abdur-Reheem-X has neither claimed nor shown that the defendants housed him next to the mentally ill inmate with the purpose of endangering his health or safety. *See Hudson,* 503 U.S. at 9. Absent this subjective element, Abdur-Reheem-X's claim was properly dismissed. *See Knop,* 977 F.2d at 1012.

While the facts of *Abdur-Reheem-X* are similar to the facts presented in this case, they are not identical at least for purposes of this motion. Plaintiff in this case has alleged that defendants intentionally failed to clean up the human waste as punishment and that his water was contaminated. Defendants have failed to address these allegations of fact. Defendants have not filed a motion for summary judgment which could establish a lack of a genuine issue of fact. In *Abdur-Reheem-X*, the court decided a summary judgment motion and determined that there existed no genuine issue of fact. Defendants in this case have filed a motion to dismiss. The court must accept plaintiff's factual

allegations. As already explained, plaintiff has stated an Eighth Amendment claim in his complaint. This issue should not again be revisited.

Accordingly, it is recommended that defendants' motions to dismiss (Docket #21 and #45) be denied. It is further recommended that defendants' motion to dismiss (Docket #24) be granted, dismissing defendants Bennett, Hemmela, VanAlstine, Kemp, Menard, Pelto, Hill, Beauchamp, Turner, Besner and Ekdahl without prejudice for failure to exhaust grievance remedies.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: February 20, 2008