UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER BEY,

    Plaintiff,                                        Case No. 2:06-cv-243

v.                                                 HON. ROBERT HOLMES BELL

TIMOTHY LUOMA, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Christopher Bey, an inmate currently confined at the Baraga Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). The remaining defendants are Warden Timothy Luoma, Deputy Warden Darlene Edlund, Assistant Deputy Warden William Luetzow, Resident Unit Manager William Jondreau, and Corrections Officer J. Burke. The only remaining claim is that plaintiff was directly exposed to human waste in his own cell and forced to drink from a contaminated sink.

Defendants move for summary judgment. Plaintiff moves for partial summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff argues that he should be awarded partial summary judgment because he was exposed to direct human waste in his cell for twenty days. Defendants argue that the case should be dismissed because plaintiff never filed any grievances against any defendant asserting that plaintiff was directly exposed to human waste in his cell. It is not disputed that it is defendants' burden to show lack of exhaustion of grievance remedies and plaintiff must properly exhaust his grievance remedies by naming each defendant in a relevant grievance asserting the factual subject matter of the claims presented in his complaint. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*,

126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23. Defendants have attached to their motion an affidavit from James Armstrong the Manager of the Grievance and Appeals Section for the Michigan Department of Corrections. Mr. Armstrong has indicated that after reviewing the grievance record plaintiff never filed a grievance asserting that he was directly exposed to human waste in his cell and never named defendants Jondreau, Luoma, Edlund, and Luetzow in a grievance asserting that he was directly exposed to human waste in his cell. Mr. Armstrong acknowledges that plaintiff filed grievance AMF 2005-12-3368-0d and AMF 2006-02-518-28e asserting only that the "smell of waste [was] coming in his vent." Those grievances were not attached to defendants' motion. Plaintiff argues that in AMF-05-12-03368-03d he presented claims that he was directly exposed to human waste in his cell. Plaintiff attached that grievance to his complaint which reads:

> Grievance is wrote on "Tim Luoma" Darlene Edlund? "William Luetzow" and "William Jondreau" for subjecting prisoner "Bey" to cruel & unusual punishments by exposure to other mentally ill prisoners human waste smeared all over their cell, inside the bottom vent, and left in their toilet to rot & become spoil . . . . Since 7/14/05 until 12/16/05, the unit has been smelling like rotten & spoil human waste through the ventilation air system and causing the entire unit to smell like a raw sewage. These prisoners are permitted to live in their cell with their own human waste from hours to days as a punishment, while the human waste (feces & urine) become rotten & spoil causing "Bey" to become sick by vomiting, lack of appetite, suffered migraine headaches, nose bleeds after removing the toilet paper balls and lack of sleep . . . . 1st, 2nd & 3rd shift officers would be force to spray the orange flavor spray in to the ventilation air system to kill the rotten & spoil human waste smell in the air. "Bey" can't live in his cell without the human waste smell invading through his top vent; this problem occurs on every shift constantly without prevention and these same prisoners eat their human feces, smear them on their face, hair and body too. Place the feces inside the sink drain and sink fountain

> and basically decorate their cells with feces like a master piece of art work. This rotten and spoil smell has disturbed "Bey" from his sleep for hours and caused stress, reddish eyes, migraine headaches, and difficulties in breathing because the only oxygen that's available is the human waste smell through the top vent.

The claim that plaintiff was exposed to human waste odors from other prisoners' cells has been previously dismissed. Plaintiff's grievance is silent regarding his claim that he was directly exposed to human waste in his own cell. In the opinion of the undersigned, plaintiff's remaining claim that he was directly exposed to human waste should be dismissed for failure to exhaust grievance remedies on that issue.

Alternatively, defendants move to dismiss the claims on the merits. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Defendants deny knowledge that plaintiff was exposed directly to human waste while confined in his cell. Plaintiff has not presented any evidence that he made any defendant aware of his direct exposure to human waste. Further, plaintiff's unit passed all weekly and annual sanitary inspections. Plaintiff asserted in his deposition that he never made defendants Luoma, Edlund or Luetzow aware of his complaints. Plaintiff concedes that he only told defendant Jondreau that his cell was filthy with food, human hair and human waste and that he was offered cleaning supplies after he complained. Plaintiff has no evidence that there was actually human waste in his cell. Plaintiff bases this on the rust color in the sink and because the walls were "real brownish you know, like whether it was from dirt or old stains or human waste."[1] Plaintiff cleaned his own cell at least three times per week. Plaintiff's complaint that his sink was contaminated with human waste is based upon what he had observed prisoners do in other cells. Plaintiff merely speculated that he was exposed to human waste and unsanitary conditions in his own cell. Plaintiff has offered no evidence that he was actually subjected to human waste directly in his own cell. In the opinion of the undersigned, plaintiff cannot show that defendants violated his Eighth Amendment rights based upon plaintiff's claim that he was directly exposed to human waste in his own cell.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

---

[1] Defendants' brief only mentions the complaint of food and not the complaints of human hair and human waste.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' motion for summary judgment (Docket #145) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motion for partial summary judgment (Docket #132), motion for attorney fees (Docket #133), and motion for emotional and mental anguish damages (Docket #141) be denied. Further, it is recommended that plaintiff's motion for a writ habeas corpus ad testificandum (Docket #134), motion to appoint counsel (Docket #135), and motion for discovery (Docket #148) be denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: September 23, 2009